UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
PATRICIA MEDING, BALALLAN LTD.,
CAPITAL DIRECT, LLC; MARKETVIEW
FINANCIAL GROUP, INC., and FORTE
COMMUNICATIONS, INC.,

                         Plaintiffs,                   **MEMORANDUM and ORDER**

      — against —                         08-CV-2367 (SLT)(MDG)

RECEPTOPHARM, INC., formerly known as
RECEPTOGEN, INC.,

                         Defendant.
-----------------------------------------------------------------X
**TOWNES, United States District Judge:**

      This diversity action was first removed to this Court in September 2006, but was promptly remanded to New York State Supreme Court, Queens County, by Judge Cogan on the ground that the complaint failed to allege that the matter in controversy exceeded the jurisdictional amount of "$75,000, exclusive of interest and costs." *See Meding v. Receptopharm, Inc.*, 462 F. Supp. 2d 348 (E.D.N.Y. 2006). In June 2008, shortly after the State court complaint was amended to include an additional plaintiff and additional claims – as well as a marked increase in the damages demanded – defendant removed the action to this Court for a second time. Plaintiff now moves to remand the action again, relying on that portion of 28 U.S.C. § 1446(b) which provides that "a case may not be removed on the basis of jurisdiction conferred by [28 U.S.C. § 1332] more than 1 year after commencement of the action." For the reasons set forth below, plaintiff's motion is granted and this matter is remanded to State court.

## BACKGROUND

      The facts underlying this motion are not in dispute. Plaintiff Patricia Meding ("Meding") is a former president of defendant Receptopharm, Inc., formerly known as Receptogen, Inc. The remaining four plaintiffs – Balallan, Ltd.; Capital Direct, LLC; Marketview Financial Group,

Inc. and Forte Communications, Inc. – are all business entities which, at the times relevant to the action, were owned or controlled by Meding.

Plaintiffs, with the exception of Forte Communication, commenced this action in State court on August 18, 2006, seeking to recover on ten promissory notes which had allegedly been executed by defendant in exchange for loans. Plaintiffs utilized the expedited procedure available under section 3213 of New York's Civil Practice Law and Rules (the "C.P.L.R.") when an action is "based upon an instrument for the payment of money only or upon any judgment." C.P.L.R. § 3213. Under that procedure, plaintiffs file a motion for summary judgment in lieu of a complaint, obviating the delays inherent in the pleading process. Indeed, a complaint need never be filed, even if the motion for summary judgment is denied. In that event, the moving and answering papers are "deemed the complaint and answer, respectively, unless the court orders otherwise." *Id*.

On September 20, 2006, defendant removed this action to this Court, alleging diversity jurisdiction. However, the total amount of relief sought in the action did not exceed the jurisdictional amount of $75,000 unless one included the "default interest" which began to accrue after the notes matured. *Meding*, 462 F. Supp. 2d at 349. Arguing that such interest should be excluded in calculating the jurisdictional amount, plaintiffs promptly moved to remand the case to State court. In a memorandum and order dated November 13, 2006, Judge Cogan granted that motion, remanding the case to New York Supreme Court, Queens County. *Id*., at 353.

*The State Court Proceedings*

On August 23, 2007 – more than nine months after the case was remanded – Queens County Supreme Court Justice Peter J. Kelly denied plaintiffs' motion for summary judgment.

*Meding v. Receptopharm, Inc*., Index No. 18247/06, slip op. at 1, 6-7 (Sup. Ct. Aug. 23, 2007). The motion papers were initially deemed to be the pleadings by operation of C.P.L.R. § 3213. However, in November 2007, defendant's counsel faxed a letter to Justice Kelly, requesting that he enter an order directing the parties to serve formal pleadings. Letter to Hon. Peter J. Kelly from Barry I. Levy, Esq., dated Nov. 16, 2007, at 1 (included in Ex. I to Defendant's Second Notice of Removal). Justice Kelly declined to act on the fax; in a letter dated November 19, 2007, the Principal Law Clerk to Justice Kelly informed defendant's counsel that he would have to proceed by notice of motion unless plaintiffs' counsel was willing to stipulate to a schedule for the exchange of pleadings. Letter to Barry I. Levy, Esq., from Francis A. Kahn dated Nov. 19, 2007 (included in Ex. I to Defendant's Second Notice of Removal).

Plaintiffs' counsel proved unwilling to stipulate, advising defendant's counsel that plaintiffs did "not wish to incur the costs of drafting new pleadings" and believed that plaintiffs' motion papers were "more than sufficient to put defendants [sic] on notice of the claims against them [sic]." Letter to Cynthia Butera, Esq., from Bruce A. Schoenberg, Esq., dated Dec. 6, 2007 (included in Ex. I to Defendant's Second Notice of Removal). Accordingly, on March 31, 2008, defendant moved for an order compelling the parties to file formal pleadings. Ex. I to Defendant's Second Notice of Removal. Attached as Exhibit F to that motion was defendant's "Proposed Amended Answer with Counterclaims" (hereinafter, the "Proposed Answer"), which contained affirmative allegations relating to Meding's history with defendant.

The Proposed Answer introduced into the case allegations concerning disputes over the number of shares Meding held in defendant, as well as disputes concerning whether Meding was entitled to a salary during the time she served as an officer of defendant. The proposed pleading alleged that Meding and a "business partner," Charles McLaughlin, were among the five

founders of Receptogen; that Meding and McLaughlin together agreed to make an "equity contribution" totaling $150,000 to cover the corporation's operating expenses over the first year; and that Meding, McLaughlin and the other three founders each received 1.2 million shares in the corporation. Proposed Answer at ¶¶ 20-21. Meding was named the first president of the corporation and, from its inception in 2001 until April 2003, managed the corporate assets. *Id*. at ¶¶ 23-24, 28. According to the Proposed Answer, during this time Meding, without the knowledge or approval of the shareholder, (1) issued promissory notes to herself and to the corporate plaintiffs and (2) had the corporation execute an employment agreement obligating defendant to pay Meding a monthly salary. *Id*. at ¶ 34.

In December 2003, after learning of these alleged improprieties, the corporate directors removed Meding as an officer and director of defendant. *Id*. at ¶¶ 38-39. Thereafter, an outside accounting firm conducted an audit of the corporation's financial records and bank statements and concluded that, as of February 2004, the total assets held by the corporation attributable to monies deposited by Meding was only slightly more than the $75,000 she was supposed to have invested initially. *Id*. at ¶¶ 40-41. On September 22, 2004, the directors removed from the corporation's financial statements liabilities associated with the allegedly unauthorized promisory notes and the compensation agreements which Meding had allegedly executed in her own favor. *Id*. at ¶ 44.

On the basis of the foregoing allegations, the Proposed Answer advanced five counterclaims. In the first, defendant asserted that the $75,000 attributable to Meding could be consideration for either her shares or the promissory notes, but not both, and sought a declaratory judgment clarifying, *inter alia*, "the rights of the parties with respect to the shares of Receptopharm issued to [plaintiffs], and the promissory notes and compensation agreements

4

which Meding created . . . ." *Id.* at ¶¶ 50-51. In the second and third counterclaims, defendant requested either "rescission of the issuance of the shares . . . to Meding," *id.* at ¶¶ 53-56, or cancellation of the promissory notes, *id.* at ¶¶ 57-59, depending on whether the $75,000 attributable to Meding was determined to be consideration for the promissory notes or consideration for her 1.2 million shares. The fourth counterclaim alleged that Meding had fraudulently induced the corporation to issue her the 1.2 million shares by intentionally misrepresenting that she intended to pay – or had already paid – $75,000, and sought compensatory damages. *Id.* at ¶¶ 60-63. The fifth counterclaim also sought compensatory damages, alleging that Meding had breached her fiduciary duty in various respects. *Id.* at ¶¶ 64-66.

In opposition to defendant's motion for an order compelling the parties to file formal pleadings, plaintiffs noted that the proposed counterclaims were "essentially identical" to claims asserted by defendant in a separate action then pending in the courts of the State of Florida. Affirmation of Bruce A. Schoenberg in Opposition to Motion Compelling Parties to Exchange Formal Pleadings, at ¶ 3. Plaintiffs had no objection to consolidating all claims into one action, but did not want to litigate the counterclaims in both Florida and New York State courts. *Id.* at ¶ 4. Accordingly, they proposed that any order granting defendant leave to file its proposed amended answer be conditioned on prior dismissal of the Florida action. *Id.* However, plaintiffs also argued that there was "no reason to compel plaintiffs to file a new complaint," asserting that their papers in support of the motion for summary judgment were "more than sufficient to put defendant on notice of plaintiffs' claims against defendant . . . ." *Id.* at ¶ 2.

Defendant's motion was ultimately resolved by stipulation. In that stipulation, dated April 29, 2008, defendant agreed to voluntarily dismiss the Florida action, and plaintiff's counsel

agreed to accept service of an amended answer, including the counterclaims. Plaintiffs were not compelled to file a formal pleading, but were permitted to use their summary judgment motion as a complaint, as contemplated by C.P.L.R. § 3213.

*Plaintiffs' First Amended Complaint*

Despite the provisions of the stipulation, plaintiffs filed a First Amended Verified Complaint (hereinafter, the "Amended Complaint") on May 22, 2008. The reason that plaintiffs reconsidered their initial decision not to amend their pleading is in dispute. Plaintiffs assert that they reconsidered in light of the privately held defendant's merger with the publicly traded Nutra Pharm Corporation – a merger which result in defendant's shares being exchanged for stock that was easier to value and to sell. *See* Reply Declaration of Bruce A. Schoenberg in further Support of Second Motion to Remand at ¶ 4. Defendant, however, suggests that plaintiffs delayed filing the Amended Complaint for tactical reasons.

The Amended Complaint not only adds a new plaintiff – Forte Communications, Inc. – but includes a new cause of action, seeking to recover the value of Receptopharm shares which had allegedly been issued to plaintiffs, then unilaterally cancelled by defendant. The allegations in the Amended Complaint contradict defendant's claim that Meding and McLaughlin collectively agreed to pay $150,000 in exchange for 1.2 million shares apiece. Rather, the Amended Complaint alleges that Meding purchased these shares for $51,200 in June 2001, then purchased an additional 14,800 shares for $3,700 in September 2002. Amended Complaint at ¶¶ 9, 14. In addition, plaintiffs' pleading alleges that the four corporate plaintiffs purchased a total of 2.4 million shares for $2,400 on December 12, 2001, although one of those plaintiffs – Balallan Ltd. – subsequently sold 650,000 of its shares for $650.00. *Id.* at ¶¶ 10-15. Therefore, according to the Amended Complaint, even after Balallan sold the 650,000 shares, plaintiffs

owned 2,964,800 shares of Receptopharm, *id*. at ¶ 19, and not just the 1.2 million shares which all parties agree that Meding purchased in 2001.

In addition, the Amended Complaint alleges that plaintiffs loaned defendant far more than the amount sought in the motion for summary judgment which commenced plaintiffs' New York State court action. Specifically, the Amended Complaint alleges that defendant executed a total of 28 promissory notes in favor of plaintiffs – not just the 10 alleged in the motion for summary judgment – and that the principal and interest due on these notes as of May 19, 2008, was $331,106.56. *Id*. at ¶ 27. The largest of these notes – a December 31, 2002, note for a principal amount of $70,000 – is alleged to represent money due to Meding for accrued but unpaid salary. *Id*.

The Amended Complaint alleges two causes of action. In the first, plaintiffs allege breach of contract, asserting that defendant not only failed to pay the $331,106.56 due on the promissory notes but also failed to pay Meding $17,400 in accrued and unpaid salary, over and above the $70,000 reflected in the December 31, 2002, promissory note. In the second cause of action, plaintiffs allege that defendant unilaterally and wrongfully cancelled 1,750,000 of the 2,964,800 shares owned by plaintiffs. Alleging that defendant's merger agreement with Nutra Pharm entitles Receptopharm shareholders to receive four shares of Nutra Pharm for every share of Receptopharm, plaintiffs calculate that the 1,750,000 shares of Receptopharm are now worth seven million shares of Nutra Pharm. Nutra Pharm stock traded for six cents per share at the time plaintiffs filed their Amended Complaint, so plaintiffs seek damages of $420,000 for the cancellation of their shares.

*The Second Removal and Motion for Remand*

On June 12, 2008 – less than thirty days after plaintiffs served and filed the Amended Complaint but almost 22 months following commencement of this action – defendant removed this case to this Court for a second time, alleging that this Court now has diversity jurisdiction by virtue of the vast increase in the amount of damages sought by plaintiffs. Five days later, plaintiffs filed a second motion to remand the action to State court, arguing that removal was precluded by a provision in 28 U.S.C. § 1446(b) which provides that "a case may not be removed on the basis of jurisdiction conferred by [28 U.S.C. § 1332] . . . more than 1 year after commencement of this action." Citing to various district court cases, including *Green Point Savings Bank v. Hidalgo*, 910 F. Supp. 2d 89 (E.D.N.Y. 1995), plaintiffs principally argue that § 1446(b) is "jurisdictional in nature," and is not subject to equitable tolling. Plaintiffs' Memorandum of Law in Support of Second Motion to Remand ("Plaintiffs' Memo") at 6-7. However, plaintiffs also argue, in the alternative, that equitable tolling would be inappropriate in this case because there was nothing "'fraudulent' or 'inequitable' about plaintiffs deciding to assert additional claims" when they did. *Id*., at 8. Indeed, plaintiffs believe this remand motion is so clearly meritorious as to justify awarding them the attorneys' fees and costs associated with bringing this motion, as permitted under 28 U.S.C. § 1447(c).

In response to plaintiffs' second motion for remand, defendant argues that the time limits set forth in § 1446(b) are not jurisdictional, and that district courts in this Circuit have disregarded them in certain instances. First, defendant cites to cases in which district courts have opined that the use of equitable principles may be appropriate to permit the removal of year-old diversity cases in situations in which plaintiffs have acted tactically to avoid removal. Defendant's Memorandum of Law in Opposition to Plaintiffs' Motion to Remand ("Defendant's

Memo") at 3-6. Second, defendant notes that one court in this Circuit has even held that the one-year limitation in § 1446(b) was meant to apply only to those defendants who first attempt to remove a case more than one year after its commencement. *Id*., at 6-7 (citing *Leslie v. BancTec Serv. Corp.*, 928 F. Supp. 341, 346-47 (S.D.N.Y. 1996)). Defendant also argues that, even if this Court grants plaintiffs' motion to remand this case, the Court should not award attorneys' fees or costs because defendant had a reasonable basis for seeking removal. *Id.*, at 13-14.

## DISCUSSION

"Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant . . . to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). Among the cases over which United States district courts have original jurisdiction are "diversity cases," in which jurisdiction is conferred by 28 U.S.C. § 1332. Under the terms of § 1332, federal courts have jurisdiction over civil actions between citizens of different states where the "matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs."

Congress, however, has long imposed time limitations with respect to the exercise of the right to remove civil cases. Those limitations are currently embodied in 28 U.S.C. § 1446(b), which provides as follows:

> The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial proceeding setting forth the claim for relief upon which such action or pleading is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is

> not required to be served on the defendant, whichever period is shorter.
>
> If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable, except that a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title more than 1 year after commencement of the action.

The provision at issue in this case is the one-year limit set forth in the final clause of the second paragraph of § 1446(b), which was added to the statute as part of the 1988 Judicial Improvements and Access to Justice Act. Although there is very little legislative history relating to the 1988 amendment, what little does exist suggests that Congress was troubled by the fact that removal was possible at every stage of the proceeding, even "on the eve of trial." *See* H.R. Rep. No. 100-889 at 72 (1988), *reprinted in* 1988 U.S.C.C.A.N. 5982, 6033. The amendment rectified that problem by providing "a means of reducing the opportunity for removal after substantial progress has been made in state court." *Id*., 1988 U.S.C.C.A.N. at 6032. Although Congress recognized that the amendment would result in "a modest curtailment in access to diversity jurisdiction," *id*., Congress was willing to accept that result in order to eliminate the "substantial delay and disruption" inherent in "[r]emoval late in the proceedings." *Id*., 1988 U.S.C.C.A.N. at 6033.

The amendment also had the result of "invit[ing] tactical chicanery" on the part of plaintiffs. David D. Siegel, Commentary on 1988 Revision of Section 1446, 28 U.S.C.A. § 1446 (Thomson West 2006). For example, Seigel noted that a plaintiff could name a non-diverse defendant for the sole purpose of defeating diversity jurisdiction, "then just wait a year and drop

that party, . . . dissolving the threat of federal jurisdiction." *Id*. Similarly, a plaintiff could defeat diversity jurisdiction by misleading the court and the defendants about the amount-in-controversy until after the one-year limitation on removal expired, then amend the complaint to increase the amount of damages demanded. *See* Yosef Rothstein, Note, *Ask Not for Whom the Bell Tolls: How Federal Courts have Ignored the Knock on the Forum Selection Door Since Congress Amended Section 1446(b)*, 33 Colum. J.L. & Soc. Probs. 181, 215 (2000).

Since the enactment of this amendment in 1988, many courts have grappled with the questions of whether, and to what extent, courts have the power to rein in this "tactical chicanery." As plaintiffs correctly note, several of the courts which considered these questions in the decade following the amendment concluded that § 1446(b) is a jurisdictional provision, and that the time limitations set forth therein must be strictly enforced. For example, in *Green Point Sav. Bank v. Hidalgo*, 910 F.Supp. 89 (E.D.N.Y. 1995), the case on which plaintiffs principally rely, Judge Johnson remanded a foreclosure action which had been removed almost two years after it was commenced, holding that "the one-year limitation in section 1446(b) goes to subject matter jurisdiction." 910 F.Supp. at 92. In so ruling, Judge Johnson cited to *Brock by Brock v. Syntex Laboratories, Inc*., 791 F.Supp. 721 (E.D. Tenn. 1992), *aff'd without op.*, 7 F.3d 232 (6th Cir. 1993), which expressly held that the one-year bar was jurisdictional and had to be strictly enforced, even though that could "in some cases lead to abuse and produce harsh results." 791 F.Supp. at 723. Judge Johnson also relied on *Robinson v. J.F. Cleckley & Co.*, 751 F.Supp. 100 (D.S.C. 1990), in which the court opined that "the congressional intent in promulgating the one-year cap on removal was to limit federal jurisdiction." 751 F.Supp. at 105.

Other courts have ruled to the contrary, however, holding that the one year limit is not

jurisdictional, but merely procedural. *See*, *e.g.*, *Hill v. Delta Int'l Mach. Corp.*, 386 F. Supp. 2d 427, 429 (S.D.N.Y. 2005); *Torah Soft Ltd. v. Drosnin*, No. 00 Civ. 676 (JCF), 2003 WL 22077414, at *4 (S.D.N.Y. Sept. 8, 2003) (citing *Barnes v. Westinghouse Elec. Corp.*, 962 F.2d 513, 516 (5th Cir. 1992)). Moreover, some of the courts which have found the one-year limitation to be procedural have reasoned that the one-year time limit may be extended through application of equitable principles such as waiver or estoppel. *See*, *e.g.*, *Hill*, 386 F. Supp. 2d at 430; *In re Rezulin Prod. Liab. Litig.*, Nos. 00 Civ. 2843 (LAK) and 02 Civ. 6827 (LAK), 2003 WL 21355201, at *2 (S.D.N.Y. June 4, 2003). However, those courts have found resort to equity warranted only where "the circumstances suggest that the plaintiff acted tactically to avoid removal and the interests of justice favor removal." *In re Rezulin Prod. Liab. Litig.*, 2003 WL 21355201, at *2. For example, in *Rezulin*, the court inferred that "strategic behavior was at play" from the fact that a non-diverse defendant was non-suited only five days after the one-year anniversary of the commencement of the action and, therefore, found that "the interests of justice" would be furthered by "applying an equitable exception to the one-year time limit." *Id*. In *Hill*, the court cited with approval both *Rezulin* and a Fifth Circuit case which noted that equity might require an extension of the one-year period "[w]here a plaintiff has attempted to manipulate the statutory rules for determining federal removal jurisdiction, thereby preventing the defendant from exercising its rights." *Hill*, 386 F. Supp. 2d at 430 (quoting *Tedford v. Warner-Lambert Co.*, 327 F.3d 423, 426-27 (5th Cir. 2003). Similarly, in *Leslie v. BancTec Serv. Corp.*, 928 F.Supp. 341 (S.D.N.Y. 1996), the court declined to apply the one-year limitation in a case in which the defendant, who had filed two prior notices of removal, "would never have had to file its third notice, outside the one-year scope of 28 U.S.C. § 1446, had it not been for the

Plaintiffs' tactics." *Leslie*, 928 F.Supp. at 347.

Neither the Supreme Court nor the Second Circuit has directly addressed the question of whether the one-year limit is procedural or jurisdictional, although the Supreme Court has referred to the limitation argument in a footnote as "nonjurisidctional." *Caterpillar Inc. v. Lewis*, 519 U.S. 467, 476 n. 13 (1996).[1] However, for purposes of this motion, this Court need not resolve the issue of whether the one-year limitation in 28 U.S.C. § 1446(b) is jurisdictional or procedural. Even assuming that the one-year limitation were procedural, this Court would not equitably extend the time to remove in this case. "When a party files a motion to remand challenging the removal of an action from state court, the burden falls squarely upon the removing party to establish its right to a federal forum by competent proof." *Hill*, 386 F. Supp. 2d at 429 (internal quotations omitted); *see also R.G. Barry Corp. v. Mushroom Makers, Inc.*, 612 F.2d 651, 655 (2d Cir. 1979). In this case, defendant has not established that plaintiffs engaged in tactics designed to prevent defendant from removing the case to federal court.

First, defendant's assertion that plaintiffs omitted certain claims from the original action solely to defeat defendant's attempt to remove the case to federal court is not supported by the evidence. At the time they commenced this action, plaintiffs had claims other than those arising from the ten promissory notes addressed in the initial action, including the claim to recover on the $70,000 promissory note purportedly relating to Meding's unpaid salary and the claim to recover the value of shares which defendant allegedly cancelled. However, plaintiffs chose not

---

[1]One commentator has opined that this dictum in *Caterpillar* "should resolve the debate that even a strict construction of the amended language cannot lead to the conclusion that Congress intended to limit a federal court's jurisdiction." Rothstein, *supra*, 33 Colum. J.L. & Soc. Probs. at 222.

to raise those claims, some of which could not have been raised in an action filed pursuant to the expedited procedure set forth in C.P.L.R. § 3213. Even after summary judgment was denied – one year and five days after the action was commenced – plaintiffs never sought permission to file formal pleadings in order to raise these additional claims. Indeed, when defendant proposed filing formal pleadings in November 2007 – well over one year after commencement – plaintiffs *refused* to stipulate, noting that plaintiffs did "not wish to incur the costs of drafting new pleadings." Letter to Cynthia Butera, Esq., from Bruce A. Schoenberg, Esq., dated Dec. 6, 2007. Plaintiffs expressed no interest whatsoever in adding new claims at that juncture, stating instead that the papers filed in support of their motion for summary judgment were "more than sufficient to put defendants [sic] on notice of the claims" plaintiffs sought to raise. *Id*.

It was defendant – not plaintiffs – who first expanded the scope of this action. Defendant moved for an order requiring the parties to file formal pleadings and attached a Proposed Answer, which included counterclaims that first raised issues concerning Meding's salary and shareholdings. Plaintiffs initially opposed defendant's motion, noting that the issues raised in the counterclaim were already being litigated in a state action in Florida. Although plaintiffs subsequently agreed to permit defendant to file the Proposed Answer, provided that the Florida action was terminated, plaintiffs themselves did not immediately file an amended complaint, even though the one-year limitation had long since expired. In fact, they did not file the Amended Complaint until May 2008, shortly after Receptopharm merged with Nutra Pharm.

This Court sees no basis to question plaintiffs' representation that they reconsidered their decision not to file an amended pleading only after learning of the merger. No one disputes that, before the merger, Receptopharm was privately held, making its shares illiquid and difficult to

value. As a result of the merger, Receptopharm shares were exchanged for publicly traded Nutra Pharm stock, which could readily be sold for a market price. The fact that the Amended Complaint was filed on May 22, 2008, less than six weeks after the April 10, 2008, merger, lends considerable credence to plaintiffs' representation as to why they filed the Amended Complaint.

For these reasons, this Court finds no evidence to support defendant's suggestion that plaintiffs' delay in filing the Amended Complaint was a tactical decision, aimed at defeating defendant's right to remove the action to federal court. Accordingly, this Court concludes that there is no basis for equitably extending defendant's time to remove. Since "there is nothing in the removal statute that suggests that a district court has 'discretion' to overlook or excuse prescribed procedures," *Smith v. Kinkead*, No. 03 Civ. 10283 (RWS), 2004 WL 728542, at *1 (S.D.N.Y. Apr. 5, 2004), this Court is compelled to remand the case.

To the extent that defendant is relying on *Leslie v. BancTec Serv. Corp.* for the proposition that § 1446(b) was "meant to apply [only] to those litigants, who for the first time, file a notice of removal after one year," 928 F.Supp. at 347, this Court declines to follow *Leslie*. The *Leslie* court expressed concern that "it would be unfair to penalize the Defendant, who timely filed three removal notices, by denying its statutory right to removal based on untimeliness." *Id*. However, as previously noted, Congress contemplated such unfairness, but determined that a "modest curtailment" in the right to remove diversity cases was justified to prevent delays and unfairness inherent in last-minute removals. *See* p. 10, *supra*. The rule proposed by the *Leslie* Court amounts to a re-writing of the statute, replacing Congress's determination with the Court's own balancing of the right to removal against judicial efficiency.

15

## CONCLUSION

For the reasons set forth above, this Court concludes that defendant's second notice of removal is untimely. *See* 28 U.S.C. § 1446(b). Plaintiffs' second motion to remand is, therefore, granted, and this action is remanded to the Supreme Court of the State of New York, Queens County. Plaintiffs' motion for recovery of attorneys' fees and costs is denied in light of defendant's good-faith argument for removal.

SO ORDERED.

Dated: Brooklyn, New York
October 15, 2008

*Sandra L. Townes*
SANDRA L. TOWNES
United States District Judge